■ In the Matter of the Claim of HAMILTON MORGEN, Respondent, v CBS, INC., Appellant. PHILIP ROSS, as Industrial Commissioner, Respondent. —Appeal from a resettled decision of the Unemployment Insurance Appeal Board, filed January 29, 1976, which affirmed the decision of a referee

overruling a prior referee's decision disqualifying claimant from receiving benefits effective October 17, 1974 because of misconduct in connection with his employment. Claimant, a 25-year employee of CBS as a cameraman, was suspended on two occasions in early 1974 for lateness, tardiness and insubordination and on each occasion was suspended without pay for a four-week period. Further, claimant's file indicates that on at least six different occasions prior to October 16, 1974 he was admonished and warned by his employer that his continued lateness and tardiness without excuse would not be tolerated and that his job was in serious jeopardy. On October 16, 1974 claimant engaged in a verbal altercation with the director of a television show then in rehearsal and he was removed from the set. On October 18, 1974 claimant was advised in writing that his job was terminated because of the October 16 incident following, as it did, two prior suspensions and a history of insubordinate behavior. Claimant applied for benefits and though the referee, after hearing, determined him to be disqualified for misconduct he, nevertheless, granted leave to claimant to apply for a redetermination subsequent to arbitration of the discharge as provided for in a collective bargaining agreement between claimant's union and CBS. While the arbitrator determined that CBS had "just cause" for terminating claimant, he also concluded that the totality of his conduct did not constitute "gross insubordination" as that term is used in the employment contract relating to severance pay. Thereafter, claimant, exercising the leave granted by the initial referee, obtained a second labor hearing and that referee found his conduct not to be disqualifying. This appeal by the employer ensued. The first issue to be resolved is the contention of CBS that since the issue of claimant's conduct was litigated before an arbitrator who found "just cause" for the firing, the principles of collateral estoppel or *res judicata* should have precluded the second labor hearing and, accordingly, the determination of the first referee should not be disturbed. This contention is rejected. The two decisions of this court relied upon by the employer appellant, *Matter of Maye (Allegheny Ludlum Steel Corp.—Levine)* (48 AD2d 754) and *Matter of Slade (Levine) (41 AD2d 800, affd 34 NY2d 919)*, unlike *Schwartz v Public Administrator of County of Bronx* (24 NY2d 65) and its progeny, do not stand for the principle that fact finding before arbitrators thereafter collaterally estop Labor Department referees from conducting hearings pursuant to the Labor Law. *Slade* and *Maye* merely state that when a collective bargaining agreement provides for arbitration when an employee is terminated, the arbitrator's award is binding on both the employer and employee, and if the effect of the award is to abrogate the employee's discharge, then said discharge cannot be used as a predicate to deny benefits because of misconduct. If, however, as here, the arbitrator's award justifies the discharge, it does not preclude a Labor Department hearing, for the issues before the referee may be, and often are, dissimilar (cf. *Nesbitt v Nimmich,* 30 NY2d 622; *Schwartz v Public Administrator of County of Bronx, supra).* An employer may be completely justified in discharging an employee, yet the grounds for the firing may not constitute misconduct within the meaning of subdivision 3 of section 593 of the Labor Law. Turning to the merits, we conclude that there is more than substantial evidence to support the original referee's determination that claimant was discharged for misconduct within the meaning of section 593 of the Labor Law. The record before us, in addition to the October 16, 1974 incident which prompted claimant's discharge, also particularizes the following occasions of employee misconduct: January 8, 1974, tardiness and failure to give notice; February 26, 1974, absence from work without notice or excuse;

March 5, 1974, lateness; June 7, 1974, claimant transferred because of lack of productivity; June 5 and 10, 1974, claimant abandoned assignment; August 28, 1974, absence without notice; September 9, 1974, final warning from employer; September 25, 1974, another warning. In addition to these tabulated instances of misconduct, claimant, on March 14, 1974, wrote to his superior stating that CBS was guilty of irrational and unreasonable behavior toward him, and, on September 9, 1974, in yet another letter, said of CBS "you have shit in your blood." For the referee at the second hearing to ignore the totality of the evidence and place almost total reliance on the one incident of October 16, 1974, gives rise to administrative conduct this court cautioned against in *Matter of Paulsen (Catherwood)* (27 AD2d 493, 495) when we stated "Substantial evidence basically is the essence of the entire evidence as applied to a particular administrative determination" and "It is the test of the rationality of a quasi-judicial determination, *taking into account all of the evidence of both sides and giving consideration to the qualitative and quantitative sufficiency of the evidence adduced."* (Emphasis supplied.) In our view, the cumulative record of claimant's conduct constituted sufficient misconduct contrary to his employer's interest not only to justify discharge but to sustain the conclusion of the first referee that such conduct disqualified claimant from receiving benefits *(Matter of Greene [Levine]*, 48 AD2d 747; *Matter of Kraeger [Catherwood]*, 34 AD2d 1033). Decision reversed, with costs, and matter remitted to the board for further consideration. Mahoney, Larkin and Reynolds, JJ., concur; Greenblott, J. P. and Sweeney, J., dissent and vote to affirm in the following memorandum by Greenblott, J. P. Greenblott, J. P. (dissenting). The determination of the issue of misconduct is a factual one *(Matter of Desvaux [Levine]*, 49 AD2d 778). When such a determination is supported by substantial evidence, it must be affirmed *(Matter of Lester [Catherwood]*, 30 AD2d 1025). The findings of the referee dated June 10, 1975 were adopted by the board. These findings stated that claimant was terminated because of an adverse report by his technical director relating to an incident on October 16, 1974 involving claimant and the technical director. Apparently claimant found it necessary to take medication and indicated to the technical director that he was going to a water fountain for that purpose. The referee found that the noise of a heated conversation between the two "attracted the attention of the rehearsal director who asked them to quiet down * * * No direction or instruction was given to claimant at that time to assume his rehearsal duties, nor did he refuse to do so." The holding continued by saying that the "employer concedes that claimant did not refuse to obey any directions and instructions given to him by the technical director", and that "claimant's behavior on October 16, 1974 * * * did not reach the level of culpability necessary to support a finding of misconduct". The referee concluded that the "record fails to establish any willful and deliberate dereliction in duty, sufficient to support a finding of misconduct." The decision of the referee was affirmed by the appeal board. The majority recites incidents of prior suspensions for tardiness and lateness which do not even seem to have been considered by the board. The majority addresses itself to a consideration of the findings of the original referee which are not before us for review, since they were not adopted by the board. Before us is the second referee's decision only, as adopted by the board. It is within the fact-finding province of the board to find what, if any acts, were the real cause of the claimant's discharge, and whether those particular acts, and not others, constituted misconduct. Implicit in the decision before us for review is a finding that

claimant was fired because of the incident of October 16, 1974. This finding, as well as a finding that the conduct on the day in question did not rise to the level of misconduct, is supported by substantial evidence, and, therefore, must be affirmed.