Matter of Yura (Commissioner of Labor) (2024 NY Slip Op 00833)

Matter of Yura (Commissioner of Labor)

2024 NY Slip Op 00833

Decided on February 15, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 15, 2024

CV-22-2058
[*1]In the Matter of the Claim of Ibrahima Yura, Appellant. Commissioner of Labor, Respondent.

Calendar Date:January 17, 2024

Before:Aarons, J.P., Pritzker, Lynch, Fisher and Mackey, JJ.

New York Legal Assistance Group, New York City (Ciara Farrell of counsel), for appellant.
Letitia James, Attorney General, New York City (Mary Hughes of counsel), for respondent.

Pritzker, J.
Appeal from a decision of the Unemployment Insurance Appeal Board, filed April 11, 2022, which ruled, among other things, that claimant was ineligible to receive unemployment insurance benefits because he was not totally unemployed.
Claimant, a master baker, was employed full time for the employer, a commercial bakery, until April 2020, when his scheduled hours were reduced due to the COVID-19 pandemic. He filed for unemployment insurance benefits in May 2020 and, in June 2020, he certified for benefits over the telephone with a Department of Labor representative for the weeks ending March 22, 2020 through May 17, 2020, representing, as relevant here, that he worked two days each week although his timecards and payroll records establish that he worked four or more days each week during the first five of those weeks. For the week ending May 24, 2020 and 21 consecutive weeks thereafter, claimant certified for unemployment benefits online, each week representing that he worked no days when his timecards and payroll records reflect that he worked between one and three days. Claimant received regular unemployment insurance benefits, federal pandemic unemployment compensation (hereinafter FPUC) and pandemic emergency unemployment compensation (hereinafter PEUC). Thereafter, the Department concluded that claimant was ineligible for unemployment insurance benefits during the period of March 16, 2020 through November 1, 2020 because he was not totally unemployed during that time period, charged him with a recoverable overpayment of regular, PEUC and FPUC unemployment benefits, reduced his right to receive future benefits by 256 days and charged him with a civil penalty based upon a finding that he made willful misrepresentations to obtain those benefits.
Following a hearing, an Administrative Law Judge (hereinafter ALJ) upheld the initial determinations finding that claimant was not totally unemployed during the relevant time period and sustained the finding of recoverable overpayments. Finding that claimant had certified correctly for four of the weeks in question, the ALJ reduced the amount of recoverable overpayments of regular unemployment benefits and referred the matter back to the Department for recalculation of claimant's forfeiture of future unemployment benefits and the monetary penalty. The Unemployment Insurance Appeal Board affirmed the ALJ's finding that claimant was not totally unemployed during the relevant time period, but modified it to be effective March 16, 2020 through October 25, 2020, modified the amount of recoverable overpayments for PEUC benefits and sustained the ALJ's modification of the forfeiture and monetary penalty amounts to be recalculated by the Department. This appeal ensued.
Claimant's primary contention on appeal is that "systematic language access issues" undermined the Board's finding that he willfully mispresented his employment when certifying for unemployment benefits. Initially, "[w]hether a claimant has made [*2]a willful misrepresentation to obtain benefits is a factual issue for the Board to resolve and will be upheld if supported by substantial evidence" (Matter of Canonico [Commissioner of Labor], 217 AD3d 1307, 1308 [3d Dept 2023] [internal quotation marks and citations omitted]). The record reflects that, on the first day of the hearing, claimant indicated, when questioned, that he understood the initial determination and the proceedings and that he had no questions and was ready to proceed, and thereafter briefly testified regarding his work schedule and certifications for benefits. With claimant providing nonresponsive or vague answers to questions, the ALJ turned to the employer's witness, who testified to claimant's workdays during the relevant period; the ALJ offered explanations when claimant, proceeding pro se, did not understand the issues and helped him phrase questions for the witness. The ALJ, noting that claimant spoke with an apparent accent but had not requested translation services in his hearing request, then offered claimant the services of a French language translator, which claimant accepted; after a translator was procured, claimant resumed testifying, repeatedly answering in English despite admonishments to speak through the translator. At the next hearing date, claimant, again assisted by an interpreter, assured the ALJ that he understood, had no questions and was ready to proceed, and the employer's witness and claimant testified further.
Claimant at no time complained that he did not understand the translator or the proceedings and testimony, that he needed any of the relevant documents translated [FN1] or that he did not understand the certification questions when he answered them. To that end, the Board found that claimant's testimony "establishe[d] that he readily recalled the certification question[,] which asked simply on how many days he had worked in the prior week[,] without any indication that he misunderstood what he was asked to report." On the request for a hearing form, claimant had expressly declined to have the hearing conducted in another language and, after the ALJ read the initial determination to him at the hearing, he testified that he "understood everything" and had no questions. At the hearing and on claimant's appeal to the Board, he did not raise any issue as to the adequacy of the language access services or the hearing translators.
A review of the hearing transcripts reflects that, although claimant repeatedly refused to answer questions or provided answers that failed to respond to the questions posed and offered testimony that was largely "vague and contradictory," as the Board aptly characterized it, he was able to understand and respond to questions posed in English and, later, in French, often responding in English rather than utilizing the translator. He was able to participate in the hearing and understand the employer's testimony and the information imparted to him by the ALJ, who likewise understood [*3]claimant's testimony, and no due process concerns are evident (see Matter of Mercure [Commissioner of Labor], 27 AD3d 857, 858 [3d Dept 2006]; Matter of Iskhakov [Commissioner of Labor], 11 AD3d 872, 873 [3d Dept 2004]; Matter of Vega [Hartnett], 168 AD2d 727, 727 [3d Dept 1990]; Matter of Ramsey [Ross], 63 AD2d 1061, 1061 [3d Dept 1978]).
To the extent that claimant contends that the Board's factual finding that he made willful false statements in certifying for benefits lacks substantial record evidence, we disagree (see Matter of Canonico [Commissioner of Labor], 217 AD3d at 1308). Notably, "a willful false statement or misrepresentation is one which was made knowingly, intentionally or deliberately, and criminal intent need not be shown, and a claimant may be found to have made a willful misrepresentation to obtain benefits even if the false statement . . . was the result of confusion" (id. [internal quotation marks, brackets and citations omitted]). The Board credited the employer's witness and documentary evidence in finding that, for the dates in question, claimant had falsely reported the number of days he worked when certifying for benefits, that he received the benefits in issue, and that he "knew on how many days he had worked each week when he falsely reported same" by underreporting the days worked. The Board expressly rejected his claims that he misunderstood the certification question which asked, in a "straightforward" manner, how many days, not hours, he worked each week, which it found "require[d] no specialized knowledge to accurately answer." The Board, as the sole arbiter of credibility, was entitled to reject claimant's internally contradictory and evasive testimony attempting to explain his failure to accurately report the number of days worked each week (see id. at 1308-1309; Matter of McNamara [Commissioner of Labor], 215 AD3d 1215, 1216-1217 [3d Dept 2023]). Accordingly, given the Board's finding that claimant made willful false statements to obtain benefits, he was properly charged with recoverable overpayments of state and federal benefits paid to him as a result of those misrepresentations (see Matter of Douglas [Commissioner of Labor], 217 AD3d 1311, 1313-1314 [3d Dept 2023]; Matter of Canonico [Commissioner of Labor], 217 AD3d at 1308; Matter of Lauriello [Commissioner of Labor], 213 AD3d 1129, 1131 [3d Dept 2023]). Claimant's remaining contentions, to the extent preserved for our review, have been considered and found to be unpersuasive.
Aarons, J.P., Lynch, Fisher and Mackey, JJ., concur.
ORDERED that the decision is affirmed, without costs.

Footnotes

Footnote 1: Executive Law § 202-a, requiring language translation service for documents relevant to services offered by state agencies, on which claimant relies, was not in effect until July 1, 2022, after the Board's decision here (see L 2022, ch 56, § 1). Claimant's contentions that federal guidance regarding language access and translation services (see US Department of Labor, Employment and Training Administration, Unemployment Insurance Program Letter No. 02-16, available at https://www.dol.gov/agencies/eta/
advisories/unemployment-insurance-program-letter-no-02-16 [last accessed Feb. 8, 2024]) was not complied with relative to certification forms and online claims filing systems were not raised in the administrative proceeding and are not properly before us.